IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 30, 2022 Session

**IN RE ARIANNA B. ET AL.**

**Appeal from the Chancery Court for Putnam County**
**No. 2019-38-A        Ronald Thurman, Chancellor**

_____

**No. M2021-00980-COA-R3-PT**

_____

In this termination of parental rights case, Appellant Father appeals the trial court's termination of his parental rights to the two minor children on the ground of abandonment by failure to support, Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A)(iv). Appellant also appeals the trial court's finding that termination of his parental rights is in the children's best interest. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and CARMA DENNIS MCGEE, JJ., joined.

Michael R. Giaimo and Casey D. Brown, Cookeville, Tennessee, for the appellant, Corey B.[1]

Dana R. Looper, Cookeville, Tennessee, for the appellees, Elana H. and Joshua H.

**OPINION**

**I. Background**

Appellant Corey B. ("Father") is the biological father of Arianna B. (d.o.b. January 2011) and Ashton B. (d.o.b. November 2014) (together, the "Children"). Elana H. ("Mother") is the Children's mother. On August 31, 2018, Mother and Father were divorced by order of the Chancery Court of Putnam County ("trial court"). Concurrent

_____

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names to protect their identities.

with the divorce decree, the trial court entered a Permanent Parenting Plan ("PPP") for the Children. The PPP granted Mother sole custody of the Children. Due to concerns regarding Father's alcohol and drug use, and issues of domestic violence, he received supervised visitation on Sundays from 12:00 p.m. until 4:00 p.m. and on Wednesdays from 4:00 p.m. until 8:00 p.m. Father was ordered to pay $300 per month in child support. On October 12, 2018, Father was incarcerated for a DUI; he was released on June 18, 2019. In January 2020, Father violated his probation when he tested positive for methamphetamine. He was sentenced to 30 additional days in jail, and his probation was extended for six months.

On February 23, 2019, Mother married Joshua H. (together with Mother, "Appellees"). On July 25, 2019, Appellees filed a petition to terminate Father's parental rights. As grounds, Appellees averred: (1) abandonment by failure to visit and support, Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A); and (2) failure to manifest an ability and willingness to assume legal and physical custody of the Children, Tenn. Code Ann. § 36-1-113(g)(9)(a)(iv). On August 7, 2019, the trial court appointed a guardian ad litem for the Children.

On December 5, 2019, Father filed an answer and counter-complaint, requesting modification of the PPP to award him more visitation. On the same day, Father also filed a motion for visitation. On January 7, 2020, Appellees filed an answer in opposition to Father's counter-complaint. Appellees also opposed Father's motion for visitation. On March 5, 2021, Father filed a "second and renewed" motion for visitation, which Appellees opposed.

The trial court heard the case on June 2 and June 23, 2021. By order of July 28, 2021, the trial court terminated Father's parental rights on the sole ground of abandonment by failure to support and on its finding that termination of Father's parental rights is in the Children's best interests. Father appeals.

## II. Issues

We state the dispositive issues as follows:

1. Whether there is clear and convincing evidence to support the trial court's termination of Father's parental rights on the ground of abandonment by failure to support.

2. Whether termination of Appellant's parental rights is in the Children's best interests.

## III. Standard of Review

The Tennessee Supreme Court has previously explained that:

> A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L. Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522-23 (Tenn. 2016) (footnote omitted). In Tennessee, termination of parental rights is governed by statute, which identifies "'situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))). Thus, a party seeking to terminate a parent's rights must prove: (1) the existence of one of the statutory grounds; and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. *Santosky*, 455 U.S. at 769. As such, a party must prove statutory grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W. 3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination of parental rights cases, appellate courts review a trial court's factual findings *de novo* and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***In re Carrington H***., 483 S.W.3d at 523-24 (citing ***In re Bernard T.***, 319 S.W.3d 586, 596 (Tenn. 2010); ***In re M.L.P.***, 281 S.W.3d 387, 393 (Tenn. 2009); ***In re A.M.H***., 215 S.W.3d 793, 809 (Tenn. 2007)). The Tennessee Supreme Court has explained that

> [t]he trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. ***In re M.L.P.***, 281 S.W.3d at 393 (quoting ***In re [A.M.H.]***, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. ***In re Angela E***., 303 S.W.3d at 246.

***In re Carrington H.***, 483 S.W.3d at 524.

As set out in context below, in its order terminating Father's parental rights, the trial court made specific findings that Appellees were credible witnesses. With regard to credibility determinations, this Court has stated:

> When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. Further, "[o]n an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings."

***In re M.L.P.***, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing ***Seals v. England/Corsair Upholstery Mfg. Co., Inc.***, 984 S.W.2d 912, 915 (Tenn. 1999)). Accordingly, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. ***Id.***

### IV. Grounds for Termination

The trial court found, by clear and convincing evidence, that Father's parental rights should be terminated on the ground of abandonment by failure to support. In pertinent part, Tennessee Code Annotated section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and nonexclusive, so that listing conditions, acts or omissions

in one ground does not prevent them from coming within another ground:

> (1) Abandonment by the parent or guardian, as defined in § 36-1-102,
> has occurred;

Tenn. Code Ann. § 36-1-113(g)(1). As noted by the trial court, Father was incarcerated in the months immediately preceding the filing of the petition to terminate his parental rights. As such, the definition of "abandonment" set out at Tennessee Code Annotated section 36-1-102(1)(A)(iv) applies. At the time of the filing of the petition to terminate Father's parental rights, Tennessee Code Annotated section 36-1-102(1)(A)(iv) provided, in relevant part:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> ***
>
> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has failed to visit or has failed to support or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. If the four-month period immediately preceding the institution of the action or the four-month period immediately preceding such parent's incarceration is interrupted by a period or periods of incarceration, and there are not four (4) consecutive months without incarceration immediately preceding either event, a four-month period shall be created by aggregating the shorter periods of non-incarceration beginning with the most recent period of non-incarceration prior to commencement of the action and moving back in time. Periods of incarceration of less than seven (7) days duration shall be counted as periods of nonincarceration. Periods of incarceration not discovered by the petitioner and concealed, denied, or forgotten by the parent shall also be counted as periods of non-incarceration. A finding that the parent has abandoned the child for a defined period in excess of four (4) months that would necessarily include the four (4) months of nonincarceration immediately prior to the institution of the action, but which does not precisely define the relevant four-month period, shall be sufficient to establish abandonment.

\*\*\*

(D) For purposes of this subdivision (1), "failed to support" or "failed to make reasonable payments toward such child's support" means the failure, for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period;

\*\*\*

(F) Abandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of a child;

Tenn. Code Ann. §§ 36-1-102(1)(A)(iv), (1)(D), (1)(F).

Under Tennessee Code Annotated section 36-1-102(1)(I), the burden of proof to show that a failure to support was not willful lies with the parent, to-wit:

For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure . . . .

Tenn. Code Ann. § 36-1-102(1)(I). Concerning willfulness in the context of abandonment for termination of parental rights purposes, this Court has stated:

In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing. . . .

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-

of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

***In re Audrey S.***, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. Aug. 25, 2005) (internal citations and footnotes omitted). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment . . . is a question of law." ***In re Adoption of Angela E***., 402 S.W.3d 636, 640 (Tenn. 2013) (citing ***In re A.M.H***., 215 S.W.3d at 810). As previously discussed, this Court reviews questions of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***In re Carrington H***., 483 S.W.3d at 523-24. We review questions of law *de novo* with no presumption of correctness. ***In re Adoption of Angela E***., 402 S.W.3d at 640 (citing ***In re A.M.H***., 215 S.W.3d at 810).

Turning to the record, in its order terminating Father's parental rights, the trial court found, in relevant part:

> Based upon the testimony, [Father] was incarcerated from October 12, 2018 through June 18, 2019. Under the law, the "four months preceding" period shall run during the four months preceding the incarceration, which in this Case would be the four months prior to October 12, 2018.
>
> ***
>
> As it relates to abandonment by willful failure to support, the Court does find that the [Appellees] established by clear and convincing evidence that [Father] did not pay support in the relevant four-month period. [Father] even admits during his testimony that he did not pay support during that four-month period. From the evidence and testimony presented, [Father] was working during these times. [Father] testified about the various places that he had worked during their marriage and afterwards. [Father] does not have a disability or anything that prevents him from being able to work. During the time that [Father] and [Mother] were married and through the relevant time period for this case, [Father] worked [for five employers]. The Court finds that [Father] had employment and the ability to pay support, but his choice to not pay support was willful. Therefore, the Court finds that Petitioners met their burden of proof by clear and convincing evidence on this issue.

With the exception of periods of incarceration, the proof established that Father maintained gainful employment. Aside from his regular paychecks, Father received two "stimulus" checks during the COVID-19 pandemic, yet he conceded that he did not use any of this money to pay child support:

Q [to Father]. You didn't send any of that $1,200 stimulus check to [Mother], did you?
A. No.
Q. And you didn't send any of that $600 stimulus check to [Mother], did you?
A. No.

In addition to the stimulus payments, Father also received a tax refund during the relevant time period. Janet E., the Children's maternal grandmother, testified that Crystal L., the Children's paternal grandmother, indicated that Father wanted to use his tax refund to pay child support. However, Janet E. stated that she never received this money. Father testified that he tendered the money, but Janet E. refused to take it. Janet E. disputes this testimony. Indeed, Father testified that he gave Janet E. money towards child support on several occasions. However, when asked about canceled checks or receipts for such payments, Father testified that he paid in cash and that any receipts were lost:

Q. Okay. All right. Let's talk a little bit about child support. Child support was ordered in this divorce. Before [the petition to terminate parental rights] was filed, did you pay any child support directly to [Mother]?
A. Hm? No.
Q. Okay. Did you pay any to [Janet E.]?
A. Yes.
Q. Okay. And when did you pay that and what form did it take?
A. It was in cash and she had given me receipts for the child support payments, but they have been lost.

During her testimony, Janet E. disputed receipt of any payments from Father. As set out in context below, the trial court did not find Father's testimony credible. The trial court specifically found Appellees' testimony credible. As discussed above, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d at 143 (citations omitted). Applying this standard, there is clear and convincing evidence in the record that, despite having the means and ability to do so, Father failed to pay child support during the relevant four-month period. It was only **after** the Appellees filed their petition to terminate his parental rights, that Father made several child support payments. However, Father's attempts to provide support **after** Appellees filed the petition to terminate his parental rights is ineffective to remedy the fact that he clearly failed to make any support payments during the relevant four-month time period. Tenn. Code Ann. § 36-1-102(1)(F) ("Abandonment may not be repented of by resuming . . . support subsequent to the filing of any petition seeking to terminate parental . . . rights . . . ."). Therefore, we conclude that there is clear and convincing evidence to support the trial court's termination of Father's parental rights on the ground of abandonment by failure to support.

**V. Best Interest**

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. *In re Bernard T.*, 319 S.W.3d at 606 (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793 at 809). As the Tennessee Supreme Court explained:

> Facts considered in the best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d [533,] 555 [(Tenn. 2015)] (citing *In re Audrey S.*, 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." *Id*. When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." *In re Audrey S.*, 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. *Id*. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child. . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. At the time Appellees filed their petition to terminate Appellant's parental rights, these factors included, in relevant part:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). This list of factors is not exhaustive, nor does the statute "require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W. 3d 652, 667 (Tenn. Ct. App. 2005). Each termination of parental rights case includes different circumstances, and the consideration of a single factor or other factors outside those enumerated in the statute, may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877. As explained by this Court:

> Ascertaining a child's best interests . . . does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s [] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 1994).

In its order terminating Father's parental rights, the trial court made the following findings concerning the Children's best interest:

> a. Whether the parent or guardian has made an adjustment of circumstances, conduct, or conditions as to make it safe and in the child's best interest to be in the parent's home. From the testimony, [Father] has had a long history of drug and alcohol abuse. However, the Court finds from the testimony that he has corrected (for the most part) his behavior, so this factor weighs in his favor.
>
> b. Whether the parent or guardian has failed to effect a lasting adjustment with reasonable effort. The Court doesn't recall much proof on this factor.

Even after [Father's] release from incarceration, he failed a drug screen.

c. Whether the parent or guardian has maintained visitation or contact with the child. It is the opinion of the Court that this has not really happened.

d. Whether a meaningful relationship has otherwise been established between the parent or guardian and the child. [Father] and his mother said that they had a good relationship. [Appellees] and [Janet E.] testified that there wasn't really a relationship there, so the Court has two versions of what is going on here. The Court notes that at the time the parties were divorced, the last visitation with these [C]hildren were when they were three and seven. It's the Court's opinion that [Father] has been out of the picture for several years. The Court finds that the [Appellees'] testimony is more credible regarding this factor, because [Father] has not been around these [C]hildren for so long and because the [C]hildren were so young during his last contact and visitation with them. The Court finds [Joshua H.] to be a very credible witness. He testified that he loved the [C]hildren. He is involved in their everyday activities. He coached their sports teams. He helped them with homework, helped them with bathing, feeding, and the other things that a father is supposed to do. The Court finds his testimony very credible and finds that he has bonded with the [C]hildren.

e. The effect of a change of caretakers or physical environment is likely to have on the [C]hildren's emotional, psychological, or medical condition. From the testimony, it sounds like both of these [C]hildren are well grounded and have a good environment. They are doing well. It is the opinion of the Court that based on that, if the Court were to uproot them right now and change their situation, that would be a detriment to their wellbeing.

f. Whether the parent or guardian or other persons residing with the parent or guardian has shown brutality, sexual, physical, emotional, or psychological abuse or neglect toward the children or another child or adult in the household. There is testimony that [Father] had a severe drug and alcohol problem in the past. He cut his wrists on one occasion and there was testimony presented about his abuse that led to the filing of the divorce. There was testimony presented that the parties' daughter still has nightmares as a result of the abuse, so this factor weighs in favor of the [Appellees].

g. Whether the physical environment of the parent or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances that may render the parent or guardian consistently unable to care for the child. The Court does not find that there is any proof of that going on right now, but that was the basis behind why [Mother] and [Father] divorced and the reason he was incarcerated. Until and even after his incarceration, these activities were there. The Court does not find that they are going on at this time.

h. Whether the parent or guardian's mental or emotional status would be detrimental. It causes the Court some concern that [Father] did cut his wrists,

by his own admission. This factor would weigh in the [Appellees'] favor.

i. Whether the parent or guardian has paid child support consistent with child support guidelines. The credible testimony is that [Father] started paying child support after this petition was filed and he has paid consistently now. However, it is clear that he failed to pay prior to the petition being filed. This factor weighs in favor of [Appellees].

7. Based upon the analysis of the best interest[] factors, the [Appellees] have met their burden of proof by clear and convincing evidence that it is in the best interests [of the Children] that [Father's] parental rights be terminated.

The record supports the trial court's findings. Mother testified to Father's abuse of drugs and alcohol during their marriage. Mother further testified concerning several violent episodes in the home, including an incident where Father hit Mother with a chair, and another incident where Father threatened Mother and the Children with a knife then threatened to kill himself. Janet E. testified to an incident that occurred during a visitation she was supervising where Father became angry and slammed his fist against the wall. Father denies these events, but, as noted above, the trial court did not find his testimony credible. The record indicates that Arianna has suffered from nightmares and fears regarding Father. Mother, Joshua H., and Janet E. separately opined that these fears stem from the fact that Arianna witnessed abuse perpetrated by Father against Mother. Arianna is currently receiving therapy to address these issues. Therefore, in the absence of any proof that Father has addressed his anger issues, there is concern that his emotional status might pose a risk of harm to the Children.

There is also concern that Father has not seriously addressed his drug and alcohol abuse. Father admitted to two DUIs within a three-month time period. Mother testified that Father was also stopped on a college campus on suspicion of DUI when Arianna was in the vehicle with him. No police report was filed as the incident was addressed by a college safety officer, and Mother arrived to drive the vehicle. On another occasion, Father admitted to "rolling" a vehicle, which he was operating under the influence. As noted above, Father was incarcerated for DUI. Although he testified that he has not abused alcohol or drugs since his release, Trial Exhibit 8 is his conviction for probation violation for testing positive for methamphetamine. Father testified that he does not use methamphetamine regularly and that his positive test resulted from a "one-time" use. Crystal L. also opined that Father only used methamphetamine one time, but, again, the trial court's credibility findings weigh against this testimony. Regardless of whether Father's use of methamphetamine was a single event or a regular occurrence, the fact remains that he did use methamphetamine while he was on probation for a DUI. Father's decision to use methamphetamine at all clearly supports a finding that he has not sufficiently addressed his substance abuse issues. Father also admitted that, during his only attempt at in-patient rehabilitation, he checked out within a week against medical advice, and then incurred a DUI on the same day he left the facility.

Furthermore, there is no indication that either child has a bond with Father. The testimony shows that Ashton "doesn't know who [Father] is," and refers to his step-father, Joshua H., as "dad". Arianna has shown fear when she is around Father, or thinks he is present.

Father's participation in the Children's lives has been sparse and inconsistent. Although Father has exercised some visitation, there is nothing to suggest that he has been able to form a bond with the Children, *see supra*. Janet E., who supervised all visits, testified to smelling alcohol on Father's breath at visitations and, as discussed above, testified that his behavior was sometimes erratic, which scared the Children and caused her to end some visits early. Meanwhile, the Children have bonded with their step-father, and he wishes to adopt them. The trial court found Joshua H.'s testimony to be very credible. Joshua H. testified that he has assumed the role of father with the Children. He supports them financially and emotionally, and is very active in their extracurricular activities. During his testimony, Joshua H. expressed his love for the Children and for Mother and indicated his intent to provide a loving, stable home. To remove the Children from this environment would likely cause them emotional distress. This is especially so in view of the lack of evidence that Father has addressed his anger and substance abuse issues.

Finally, Father has failed to provide any meaningful support for the Children. Instead, this role has been assumed by Joshua H. As discussed above, Father's only support was tendered after the petition to terminate his rights was filed, and this fact does not cure his previous decision to withhold support. From the totality of the circumstances, and the record as a whole, there is clear and convincing evidence to support the trial court's finding that termination of Father's parental rights is in the Children's best interests.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's order terminating Appellant's parental rights. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Corey B., for all of which execution may issue if necessary.


_____s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE